[Civ. No. 24736. Second Dist., Div. One. Mar. 20, 1961.]

THOMAS EISTRAT, Appellant, v. NORTHERN LUMBER COMPANY (a Partnership) et al., Respondents.

Thomas Eistrat, in pro. per., for Appellant.

Vincent Scott for Respondents.

FOURT, J.—This is an appeal from a judgment in favor of defendants in an action involving an alleged conversion of certain lumber.

The first cause of action set forth in the complaint is for conversion of 200,000 board feet of lumber for which the plaintiff claims damages of $40,000; the second cause of action is for the value of 200,000 board feet of lumber in possession of the defendants in the amount of $40,000. The Clawsons answered the complaint by a general denial and in effect among other things set forth as affirmative defenses that the lumber

was owned by Jones Lumber and Mill Company, hereinafter referred to as Jones, and not by plaintiff; that payment for the logs from which the lumber had been produced had been made; that plaintiff was guilty of laches; that plaintiff was estopped from recovery by his conduct; that the issues involved have been decided against plaintiff in other actions and were res judicata and that plaintiff was estopped to pursue the action by reason of his election to pursue other remedies.

The plaintiff and his wife owned some timberland in Tulare County as community property and he acted for and on behalf of his wife as well as in his own behalf, and the conduct of either was the act and conduct of both.

On August 2, 1948, plaintiff made and entered into a "Timber Sales Agreement" with Jones, wherein plaintiff agreed to sell timber from his land to Jones. The contract provided among other things that the title to the timber passed to Jones when it was severed from the land and became logs, for which Jones was to pay $8.50 per thousand board feet of merchantable timber. Jones went onto the property under the provisions of the agreement, erected a sawmill and between August, 1948, and some time in November, 1948, cut between 125,000 and 500,000 board feet of timber. Said logs were later made into lumber by Jones.

On about October 10, 1948, plaintiff notified Jones that the contract was terminated; however on December 14, 1948, plaintiff filed an action against Jones in Tulare County for damages for an alleged violation of the contract and caused an attachment to be issued.

On June 21, 1949, defendants entered into a purchase and sale contract with Jones for certain lumber. During the negotiations for the contract Jones told defendants that he had some bothersome creditors and defendants refused to proceed further toward making a contract with him unless Jones was going to be able to protect the defendants from his creditors. Jones stated that he would consult with his lawyer about the matter and following his lawyer's advice Jones filed a petition in bankruptcy on June 24, 1949; a restraining order was issued against the creditors of Jones thereby enabling him to operate his sawmill and sell his lumber without interference.

Between June 21, 1949, and August 6, 1949, defendants purchased 161,022 board feet of lumber from Jones, an amount which is less than could be produced from 140,000 board feet of logs. Defendants paid Jones for all of the lumber received

by them. Jones paid the plaintiff for the logs from which the lumber sold to defendants was made.

On August 12, 1949, plaintiff's wife filed a verified "Proof of Claim" in the Jones bankruptcy proceedings, wherein she set forth that Jones was liable to her for $8,250, under the written contract of August 2, 1948, and a copy of the "Timber Sales Agreement" was attached to the claim. That claim was subsequently withdrawn.

Plaintiff petitioned the court in the bankruptcy proceeding on September 29, 1949, to reclaim the property, and findings and an order dated October 21, 1950, were made with reference thereto. A petition to review that order was filed by plaintiff and an order was so made and a final judgment therein was made in about October 1951. Judgment in this case was for the defendants.

 Appellant now contends that there was no substantial evidence to support the findings of fact and that it was reversible error to deny plaintiff's motion for a new trial.

Appellant complains at great length about the defendants refusing to contract with Jones until they were assured that they would be protected from the creditors of Jones. The fact is that defendants did not advise Jones to go into any bankruptcy proceeding and there was no evidence of any collusion between Jones and the defendants with reference to the making of the contract to buy and sell the lumber in question. Appellant asserts in effect that the contract was tainted and infected because of the Jones bankruptcy proceedings and that Jones' title to the logs and lumber was faulty. In *Eistrat* v. *Brush Industrial Lumber Co.*, 124 Cal. App.2d 42 [268 P.2d 181], the court said:

". . . on or about August 2, 1948, plaintiff entered into an agreement with Jones Lumber and Mill Company (hereinafter referred to as the vendee) by the terms of which plaintiff gave vendee the right to cut timber on certain property owned by plaintiff." [P. 43.]

"[1] First: *Does the evidence sustain the finding of the trial court 'that plaintiff had no right, title or interest in or to said lumber; that said defendant was the owner of said lumber, and refused and had the right to refuse to deliver said lumber, or any part thereof, to plaintiff'?*

"*Yes.* The evidence discloses that plaintiff entered into a contract giving vendee the right to remove certain lumber from property which he owned, and thereafter vendee did remove the lumber but did so in violation of certain provisions

of the contract (this lumber was sold to defendants) ; that plaintiff knowing of the violation of the provisions of the contract waived any rights against defendants by (1) expressly telling them he would not hold them liable in any way for the alleged breach of contract by vendee (see evidence set forth in the footnote, *supra*; and (2) by instituting the action in Tulare County against vendee and obtaining the levy of a writ of attachment upon defendants for sums which it owed vendee. [2] The rule is established in California that one who obtains an attachment in pursuance of a contractual remedy is estopped to later pursue another remedy predicated upon an alleged tort arising from the same set of facts. (*Estrada* v. *Alvarez*, 38 Cal.2d 386, 391 [6] [240 P.2d 278] ; *Steiner* v. *Rowley*, 35 Cal.2d 713, 720 [221 P.2d 9].)

"This rule is here applicable and since defendants purchased the timber from vendee under a valid contract, the above finding of the trial court was sustained by the evidence." [Pp. 44, 45.]

It would appear therefore that the particular matter of which the appellant complains has been litigated and Jones' title was upheld in an action in which the plaintiff here was also the plaintiff.

In another action in which the plaintiff here was also the plaintiff, namely *Eistrat* v. *Western Hardwood Lumber Co.*, 164 Cal.App.2d 374 [330 P.2d 629], it was stated :

"[4] As to whether Jones Company had title to the already cut timber it is clear both from the contract itself and the authorities that timber severed from the soil under the provisions of an agreement, license or permit, before the expiration or revocation thereof, becomes the personal property of the purchaser or licensee. He is vested with the rights incident to ownership of personal property and is entitled to remove it as his own (*Sorenson* v. *Jacobson* (1951), 125 Mont. 148 [232 P.2d 332, 26 A.L.R.2d 1186] ; 54 C.J.S. § 29(c), Logs and Logging, pp. 730-731). [5] One who has felled lumber under a purchase agreement retains title to the lumber after the agreement has been revoked. (*Anderson* v. *Moothart*, 198 Ore. 354 [256 P.2d 257].) " [P. 379.]

The evidence in this case is sufficient to support the findings of the trial court to the effect that the lumber purchased by defendants from Jones was made from logs which were felled before the attempted or purported revocation of the "Timber Sales Agreement" on October 10, 1948. The finding reads as follows :

"XII

"That between the 2nd day of August, 1948 and the 10th day of October, 1948, certain timber was felled by Jones Lumber and Mill Company, or its successor Tom Jones, under said Timber Sales Agreement, and that subsequently thereto, approximately 161,000 board feet of lumber was milled from the logs of the timber so felled."

Eistrat himself testified that he saw about 500,000 board feet of logs lying in the woods on October 8, 1948.

■ However even if the timber was felled by Jones after October 10, 1948, and made into lumber sold to defendants between June 21, 1949, and August 6, 1949, the sale of such lumber was valid as Jones was operating under control and supervision within the bankruptcy action.

■ Plaintiff asserts that the defendants are "privies" with Jones and stand in his shoes. By definition a privy is as follows:

"A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." Citing *Bernhard* v. *Bank of America*, 19 Cal.2d 807, 811 [122 P.2d 892].

■ The only judgment with which we could be concerned in this case is based upon the petition of plaintiff to reclaim the property filed on September 29, 1949. The petition in that matter sets forth in part:

" '3. At the time of the filing of said petition by said debtor herein, said debtor had in his possession, and the Receiver now has in his possession, the following property belonging to your petitioner:

" 'The Northwest Quarter (NW ¼) of Section Twenty-nine (29), Township Twenty-four (24) South, Range thirty-two (32) East, Mount Diablo Base and Meridian, together with the timber and lumber and logs located thereon.'

"And the prayer of said Petition is as follows:

" 'WHEREFORE your petitioners pray that Vincent Di-Giorgio, said Receiver, be directed to surrender possession to your petitioners of said property, and that your petitioners have such other and further relief as is just.'

"And the Order on Petition for Review recites as follows:

" 'II. That the said THOMAS EISTRAT and ELMA EISTRAT are the owners of said real property and all of the logs, timber and lumber thereon and entitled to immediate possession thereof.

" 'III. That the Trustee herein forthwith deliver over to said THOMAS EISTRAT and ELMA EISTRAT Possession of said real property and the logs, lumber and timber thereon.' "

It would appear that plaintiff petitioned only for the real property, timber, lumber and logs thereon and the court apparently ordered only that plaintiff was the owner thereof and ordered the receiver to deliver the real property, logs, timber and lumber in his possession to the plaintiff. The last purchase of any lumber by defendants from Jones was on August 6, 1949.

However even assuming the findings in the federal court as claimed by plaintiff, namely, that all rights of Jones in and to his "Timber Sales Agreement" of August 2, 1948, terminated on October 10, 1948, such would not necessarily be binding upon the defendants in this action. The defendants in this action were not parties to the bankruptcy proceedings nor were they in privity with Jones, who was a party thereto. Jones did not represent the legal interests or rights of the defendants in any proceeding, nor did any officer of the bankruptcy court represent the interests of the defendants. The defendants were for all intents and purposes strangers to the federal court proceedings. There could be no mutuality of estoppel in this case. See *Eistrat* v. *Brush Industrial Lumber Co.*, 124 Cal.App.2d 42 [268 P.2d 181]; *Whitney* v. *City & County of San Francisco*, 52 Cal.App.2d 363 [126 P.2d 367]; *Bernhard* v. *Bank of America*, 19 Cal.2d 807 [122 P.2d 892]; Witkin, California Procedure, volume 3, page 1926.

It must also be remembered that the plaintiff in effect reconfirmed the "Timber Sales Agreement" when Mrs. Eistrat filed the "Proof of Claim" in the bankruptcy proceedings on August 12, 1949, some six days after the last purchase of defendants from Jones. The subsequent withdrawal of the claim only indicates that the plaintiff determined to proceed upon another course.

The record demonstrates that the plaintiff was paid by Jones for the lumber the price agreed upon between them in their contract. Having accepted the full payment under the circumstances, he cannot now collect again from the defendants.

With reference to the defense of estoppel defendants point up that after Jones had cut substantial amounts of timber into logs under the contract with plaintiff, the plaintiff attempted to terminate the agreement as of October 10, 1948,

as heretofore set forth, even though the plaintiff had already received payment for a substantial portion of the logs so cut. The plaintiff filed suit against Jones in Tulare County and sought termination of the agreement and damages and caused an attachment to issue. That suit then nullified the attempted termination. See *Eistrat* v. *Brush Industrial Lumber Co.*, 124 Cal.App.2d 42 [268 P.2d 181].

The plaintiff's motion for a new trial was thoroughly considered by the trial court. We have read the proceedings and we think the trial court was proper in denying the motion of the plaintiff.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied April 6, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 16, 1961.